DAVID B. GOODWIN (CA Bar # 104469)
ROY M. BARTLETT, JR. (CA Bar # 101563)
COVINGTON & BURLING LLP
One Front Street
San Francisco, California 94111-5356
Telephone: (415) 591-6000
Facsimile: (415) 955-6091

Attorneys for Plaintiffs
SETTON'S INTERNATIONAL FOODS, INC. and
SETTON PISTACHIO OF TERRA BELLA, INC.

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| SETTON'S INTERNATIONAL FOODS, INC., and SETTON PISTACHIO OF TERRA BELLA, INC., | Civil Case No.: |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT** |
| v. | |
| CHARTER OAK FIRE INSURANCE COMPANY, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, ST. PAUL FIRE & MARINE INSURANCE COMPANY, GREAT NORTHERN INSURANCE COMPANY, and FEDERAL INSURANCE COMPANY, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## COMPLAINT

Plaintiffs Setton's International Foods, Inc., and Setton Pistachio of Terra

Bella, Inc. (collectively, "Setton") sue Defendants Charter Oak Fire Insurance Company,

1   Travelers Property Casualty Company of America, St. Paul Fire & Marine Insurance

2   Company, Great Northern Insurance Company, and Federal Insurance Company and

3   state as follows:

4   **JURISDICTION**

5       1.    The declaratory relief claim stated herein arises under 28 U.S.C. §§ 2201

6   and 2202 and Federal Rule of Civil Procedure 57.  This Court has subject matter

7   jurisdiction over this action for damages and declaratory relief pursuant to 28 U.S.C. §

8   1332(a), because it is an action between citizens of different states and the amount in

9   controversy exceeds $75,000.00, exclusive of interest and costs.  Specifically, Plaintiffs

10  are corporations that are citizens of New York and California, while Defendants are

11  corporations that are citizens of Connecticut, Minnesota, Indiana, and New Jersey.

12  There is complete diversity of citizenship.

13      2.    This Court has personal jurisdiction over all the Defendants named herein

14  because said Defendants have done business and continue to do business in California

15  and are amenable to service of this Court's process consistent with the requirements of

16  due process.

17      3.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a), because a

18  substantial part of the events or omissions giving rise to the claim occurred in this

19  district.  Specifically, Plaintiffs have suffered loss arising in substantial part out of events

20  in this district.

21  **NATURE OF THE ACTION**

22      4.    This is an insurance coverage action brought on behalf of Setton seeking a

23  declaration of the rights, duties, and liabilities of the parties under general liability

24  insurance policies sold to Setton by Defendants, with respect to losses incurred by Setton

25  for third-party claims arising from a recall of pistachios and pistachio-containing

26  products announced in March and April 2009 by Setton in consultation with the United

27  States Food & Drug Administration ("FDA").

28

COMPLAINT FOR DECLARATORY RELIEF AND BREACH
OF CONTRACT                                    2

5.      This action also seeks damages for breach of contract resulting from certain of the Defendants' repudiation of their contractual obligations under the general liability insurance policies they sold to Setton and from their failure to investigate and settle third-party claims against Setton in a diligent and timely fashion.

## PARTIES

6.      Plaintiff Setton's International Foods, Inc. ("Setton International") is a New York corporation with its principal place of business in New York.  Setton International is authorized to do business in California.

7.      Plaintiff Setton Pistachio of Terra Bella, Inc. ("Setton Pistachio") is a California corporation with its principal place of business in New York.  Setton Pistachio is authorized to do business in California.

8.      Defendant Charter Oak Fire Insurance Company is, Plaintiffs are informed and believe, a Connecticut corporation that maintains its principal place of business in Connecticut. This Defendant has done business and continues to do business in California and is amenable to service of this Court's process.

9.      Defendant Travelers Property Casualty Company of America is, Plaintiffs are informed and believe, a Connecticut corporation that maintains its principal place of business in Connecticut.  This Defendant has done business and continues to do business in California and is amenable to service of this Court's process.

10.      Defendant St. Paul Fire & Marine Insurance Company is, Plaintiffs are informed and believe, a Minnesota corporation that maintains its principal place of business in Minnesota.  This Defendant has done business and continues to do business in California and is amenable to service of this Court's process.

11.      Defendant Great Northern Insurance Company is, Plaintiffs are informed and believe, an Indiana corporation that maintains its principal place of business in New Jersey.  This Defendant has done business and continues to do business in California and is amenable to service of this Court's process.

12.     Defendant Federal Insurance Company is, Plaintiffs are informed and believe, an Indiana corporation that maintains its principal place of business in New Jersey.  This Defendant has done business and continues to do business in California and is amenable to service of this Court's process.

**FACTS COMMON TO ALL THE CAUSES OF ACTION**

13.     Setton International is a full-service provider of nuts, dried fruit, edible seed, chocolate and yogurt panned items, and candies.  Setton International is a family-owned business that was established in New York in 1971.  Setton Pistachio, a sister company of Setton International, has operated out of Terra Bella, California since 1995. Setton Pistachio sells pistachios to food manufacturers and retailers and is currently the second largest pistachio processor in the United States.

14.     In 2007, Setton purchased general liability insurance coverage from Defendants Great Northern Insurance Company ("Great Northern") and Federal Insurance Company ("Federal") (collectively, the "Chubb Insurers") for the policy period January 1, 2008, to January 1, 2009, including Primary Liability Policy No. 3537-28-53-LIO, sold to Setton by Great Northern; Excess/Umbrella Policy No. 7968-93-32-LIO, sold to Setton by Federal; and International General Liability Policy No. 7325-97-34-LIO, sold to Setton by Great Northern (collectively, the "Chubb Policies").

15.     In 2008, Setton purchased general liability insurance coverage from Defendants Charter Oak Fire Insurance Company ("Charter Oak"), Travelers Property Casualty Company of America ("TPCCA"), and St. Paul Fire & Marine Insurance Company ("St. Paul") (collectively, the "Travelers Insurers") for the period from January 1, 2009, to January 1, 2010, including Commercial Insurance Policy No. Y-630-9299M618-COF-09, sold to Setton by Charter Oak; Commercial Excess Liability Policy No. YSM-CUP-1046N9170TIL-09, sold to Setton by TPCCA; and Global Companion Policy No. GB02901952, sold to Setton by St. Paul (collectively, the "Travelers Policies").

16.   The Chubb Policies and the Travelers Policies protect Setton against liability because of "bodily injury" or "property damage" during their respective policy periods, caused by an "occurrence."

17.   In applying for the Chubb Policies and the Travelers Policies, Setton in good faith provided all information requested by the Chubb Insurers and Travelers Insurers, respectively, and did not withhold any known material information.

18.   All agricultural products, including pistachios, may be exposed to pathogens in the environment.  Historically, however, *Salmonella* contamination has not been regarded as a potential hazard that is reasonably likely to occur in pistachios, because pistachios are harvested directly from trees and do not touch the ground, have a protective hull, and undergo a hulling and drying process that exposes the nuts to high temperatures for many hours.  Federal food-safety standards relating to pistachios do not require testing for *Salmonella* contamination on pistachios prior to shipment or sale.

19.   At all relevant times, Setton complied with federal, state, and industry food-safety standards and regulations, including Federal Marketing Order No. 983 (7 C.F.R. Part 983, Doc. Nos. AO-FV-08-0147, AMS-FV-08-051, FV08-983-1) by testing its products regularly for aflatoxin, a naturally occurring toxin found on many agricultural products.  In addition, Setton tested its products for various pathogens, including *Salmonella*, for customers that requested such testing.

20.   Before 2009, Setton had never had a recall or reported illness due to *Salmonella* contamination or any other problem associated with the safety of its products.

21.   In October 2008, employees at Setton Pistachio's Terra Bella facility received isolated positive *Salmonella* test results from a single lot of pistachios processed at that facility, pursuant to regular testing conducted for a particular customer. The lot in question had been shipped to the Setton customer on "waiver," whereby the customer requested shipment prior to receipt of microbial test results.  Immediately upon learning of the positive *Salmonella* test results, Setton informed the customer, and the

shipment was returned to the Terra Bella facility prior to any processing by the customer.  Upon return to Terra Bella, the lot underwent the "kill steps" of washing in sodium hypochlorite solution (an antimicrobial agent) and re-roasting, and thereafter it tested negative for *Salmonella*.

22.    Immediately thereafter, Setton Pistachio conducted a review process, including the hiring of an independent third-party consultant to assess the Terra Bella facility and perform extensive additional testing.  Setton redoubled their prior testing efforts, which included regular environmental pathogen testing.  Over one hundred environmental samples were tested for *Salmonella*, all results of which were negative.

23.    No additional positive test results for *Salmonella* on Setton pistachios were received by or made known to Setton before 2009.

24.    On March 23, 2009, Setton was notified by a customer, Kraft Foods ("Kraft"), that two cases of bulk pistachios from Setton in a Kraft manufacturer's inventory had tested positive for *Salmonella*.  Shortly thereafter, Kraft contacted FDA concerning the results of the *Salmonella* tests, and Kraft and the contract manufacturer announced recalls of certain pistachio-containing products.  No reports of any illness or other adverse impact on individual consumers of Setton pistachios or products containing them had been reported to Setton before Kraft notified Setton of the positive *Salmonella* tests on March 23, 2009.

25.    On March 26, 2009, Setton halted shipments of all of its pistachio products.  On March 30, 2009, Setton announced a nationwide recall of bulk roasted in-shell and shelled pistachios shipped between September 1, 2008, and March 25, 2009.  On April 6, 2009, the scope of the recall was expanded to include certain additional roasted pistachio products.  In total, Setton recalled approximately 15.4 million pounds of pistachios in connection with this recall effort.

26.    In the wake of the recall, dozens of third-party claims for property damage have been asserted against Setton by Setton customers that received shipments of Setton pistachios subject to the recall, including a significant claim by Setton's largest

1   customer, Kraft. Claims for bodily injury have also been asserted by individual

2   consumers since the recall was announced.

3        27.      On March 31, 2009, one day after the recall was initiated, Setton notified

4   the Chubb Insurers and the Travelers Insurers (collectively, the "Defendant Insurers") of

5   the losses stemming from the positive *Salmonella* tests and the pistachio recall and

6   requested coverage under the Chubb Policies and the Travelers Policies.

7        28.      Having received notice of loss, the Chubb Insurers reserved their rights

8   under the Chubb Policies via a letter to Setton dated May 6, 2009, which was

9   supplemented on February 25, 2010. In a letter to the Chubb Insurers dated October 13,

10  2009, Setton set forth in detail the bases for coverage under the Chubb Policies of certain

11  losses suffered by Setton in connection with the *Salmonella*-related recall.

12       29.      Having received notice of loss, the Travelers Insurers reserved their rights

13  under the Travelers Policies via a letter to Setton dated April 17, 2009.

14       30.      Upon first reserving their rights, the Travelers Insurers indicated that they

15  would undertake to investigate and defend third-party claims against Setton.  The

16  Travelers Insurers also immediately began requesting substantial documentation and

17  information from Setton.

18       31.      Upon receiving the first information request from the Travelers Insurers,

19  which was contained in those insurers' April 17, 2009, letter, Setton provided the

20  Travelers Insurers with a proposed confidentiality agreement. The Travelers Insurers

21  executed the revised confidentiality agreement on July 31, 2009.

22       32.      Within days of the execution of the confidentiality agreement by the

23  Travelers Insurers, Setton began sending to those insurers documents responsive to their

24  information requests.  Over the next several months, Setton cooperated and responded

25  fully to the Travelers Insurers' multiple information requests.  Setton provided

26  information via regular telephonic communications with the Travelers Insurers and their

27  counsel and sent documents to the Travelers Insurers on or about August 9, 2009,

28  October 6, 2009, October 12, 2009, October 16, 2009, November 4, 2009, November 24,

COMPLAINT FOR DECLARATORY RELIEF AND BREACH        7
OF CONTRACT

1    2009, November 30, 2009, December 3, 2009, December 10, 2009, and February 4,

2    2010.

3            33.    The Travelers Insurers sent Setton an additional reservation of rights letter

4    dated August 12, 2009, advising Setton that it would likely be exposed to third-party

5    claims in excess of the coverage limits of the Travelers Policies.

6            34.    In the August 12 letter, the Travelers Insurers also for the first time

7    reserved their rights to deny coverage on the purported ground of Setton's knowledge of

8    *Salmonella*-related "bodily injury" or "property damage" prior to the January 1, 2009,

9    inception date of the Travelers Policies.  Specifically, the Travelers Insurers reserved the

10   right to deny coverage, terminate Setton's defense, and seek recoupment of costs

11   incurred for investigation and defense "should facts ultimately reveal that Setton knew

12   contaminated products were being distributed to third parties which would, or could,

13   result in 'bodily injury' or 'property damage' to others." They failed to mention,

14   however, that the Travelers Policies are subject to an endorsement changing their

15   standard conditions to provide that '[t]he unintentional omission of, or unintentional

16   error in, any information provided by [the insured] shall not prejudice [the insured's]

17   rights under this insurance."

18           35.    In the August 12 letter the Travelers Insurers expressly acknowledged that

19   "Setton has publicly denied knowingly distributing contaminated pistachio products to

20   any customers, and *there are no facts that Travelers is aware of at this time to establish*

21   *otherwise.*"  In a letter dated October 15, 2009, Setton corrected the factual inaccuracies

22   in the Travelers Insurers' August 12 letter; confirmed that "there are 'no facts to

23   establish' that Setton ever knowingly shipped contaminated products to its customers";

24   provided further explanation why Setton had no reason to be aware of any potential

25   third-party claims involving contaminated pistachios prior to the inception of the

26   Travelers Policies; and set forth in detail the bases for coverage under the Travelers

27   Policies.

28

COMPLAINT FOR DECLARATORY RELIEF AND BREACH    8
OF CONTRACT

36.    On or about October 8, 2009, Kraft proposed a resolution of its claim against Setton by settlement, without litigation or arbitration.  The Kraft settlement proposal afforded an opportunity to resolve that claim within the limits of the Chubb and Travelers Policies.

37.    The Defendant Insurers were promptly notified of the Kraft proposal to resolve its claim against Setton.  Setton also provided the Defendant Insurers with documentation supplied by Kraft concerning its claim against Setton and the settlement proposal.  Setton was committed to resolving the matter through prompt negotiation in order to minimize any harm to its relationship with Kraft, Setton's largest customer.

38.    On October 30, 2009, Setton notified the Chubb Insurers and Travelers Insurers that Kraft had imposed a deadline of November 9, 2009, for a response to the Kraft settlement proposal.  Setton urged the Chubb Insurers and Travelers Insurers to settle Kraft's claim.

39.    In a letter dated November 9, 2009, the Travelers Insurers asserted that they could not respond to the Kraft settlement proposal because they lacked information they had sought from Setton.  The requested information to which the Travelers Insurers referred, however, had no relevance to their proper evaluation of the Kraft settlement proposal.  Instead, that information related solely to the Travelers Insurers' coverage determination.  Specifically, the Travelers Insurers sought communications between Setton and its insurance broker during the period before the recall and the assertion of the Kraft claim, which could have no relevance to the validity and amount of the Kraft claim.

40.    The next day, on November 10, 2009, the Travelers Insurers filed an action in federal district court in New York against Setton seeking a declaration of non-coverage under, and rescission of, the Travelers Policies.  The Travelers Insurers also sued the Chubb Insurers, seeking a declaration of coverage under the Chubb Policies. In their complaint the Travelers Insurers alleged in conclusory fashion that Setton knew, "prior to the inception of the [Travelers] Policies, that some salmonella-contaminated

pistachios-related bodily injury or property damage had occurred"—despite their prior admission in their August 12, 2009, letter that "there are no facts that Travelers is aware of" to support such a false conclusion, and despite Setton's prior demonstration why no such facts could exist, in its letter dated October 15, 2009.  Indeed, the Travelers complaint alleged no new facts to support its assertions regarding Setton's purported knowledge of "bodily injury" or "property damage" before the January 1, 2009, inception of the Travelers Policies, and on its face the complaint demonstrated the gaps in the Travelers Insurers' understanding of the underlying facts.

41.     Notwithstanding the filing of their lawsuit against Setton, the Travelers Insurers thereafter advised Setton that they were not denying Setton's claim under the Travelers Policies outright and requested Setton's continued cooperation in the investigation of the claim.

42.     Despite Setton's continued cooperation with, and continued production of information to, both Defendant Insurers, these insurers have to date failed to diligently and timely adjust the third-party claims against Setton.

43.     From the outset of the recall, the Travelers Insurers have asserted that their claims personnel have primary responsibility and control over any investigation and defense of all third-party claims against Setton.  In November 2009 and again in January 2010, Setton learned that the Travelers Insurers were not responding promptly to inquiries from certain of Setton's customers about the status of their third-party claims.  This failure has had and continues to have a substantial negative impact on Setton's relationships with such customers and has prejudiced Setton with respect to the claims asserted by those customers.

44.     For example, Setton was forced to attempt to negotiate with Kraft without the support of the Defendant Insurers.  Consequently, no settlement could be reached.  Kraft withdrew its settlement offer and on January 15, 2010, filed an arbitration demand against Setton seeking a substantially larger damages amount than it had previously offered to accept in settlement.  In the meantime, Kraft has ceased to purchase pistachios

1    from Setton pending settlement of its claim, which has had a substantial negative impact

2    on Setton's business.

3              45.    Setton's customer, Sun Tree LLC, also filed suit against Setton Pistachio

4    in the Superior Court of California, Tulare County, on December 14, 2009.  Sun Tree,

5    which purchased pistachios from Setton for its own food products, has alleged that it

6    suffered damages due to the recall and the contamination of Setton pistachios and Sun

7    Tree products.  Plaintiffs are informed and believe that the Travelers Insurers failed to

8    respond in a timely fashion to Sun Tree's claims before it commenced this lawsuit.

9              46.    Other Setton customers and alleged end users of Setton products have

10   threatened lawsuits due to the Travelers Insurers' failure to timely investigate, adjust, or

11   appropriately respond to certain third-party claims.  For example, Setton learned in

12   December 2009 that a consumer who claimed that he became ill after eating Setton

13   pistachios in April 2009 had been required to submit the same information repeatedly to

14   the Travelers Insurers, because the Travelers Insurers claimed they could not find the

15   information the consumer had previously submitted during roughly nine months of

16   correspondence.

17             47.    According to the Chubb Insurers, claims information has not been

18   promptly provided by the Travelers Insurers to the Chubb Insurers.  This lack of

19   cooperation by the Travelers Insurers has hindered the resolution of third-party claims

20   against Setton.

21             48.    Although nearly eleven months have passed since Setton's initial notice of

22   claim under their policies, the Defendant Insurers have failed to accept coverage without

23   qualification or reservation and have failed to adjust the underlying claims against Setton

24   in a diligent and timely fashion as required under the Chubb and Travelers Policies and

25   under the law.

26             49.    With the sole exception of a $25,000 partial payment made by the

27   Travelers Insurers after an Australian customer threatened to sue Setton, the Defendant

28   Insurers have to date failed to settle any of the underlying claims asserted against Setton.

COMPLAINT FOR DECLARATORY RELIEF AND BREACH
OF CONTRACT

11

## FIRST CAUSE OF ACTION: AGAINST THE CHUBB INSURERS AND TRAVELERS INSURERS FOR DECLARATION OF COVERAGE AND DUTY TO DEFEND AND INDEMNIFY PURSUANT TO 28 U.S.C. § 2201

50.     Setton realleges and incorporates by reference the facts set forth in paragraphs 1 through **Error! Reference source not found.** as if fully set forth herein.

51.     As established by the facts alleged above, the Chubb Insurers issued the Chubb Policies to Setton, effective for the policy period from January 1, 2008, to January 1, 2009.

52.     As established by the facts alleged above, the Travelers Insurers issued the Travelers Policies to Setton, effective for the policy period from January 1, 2009, to January 1, 2010.

53.     A real, substantial, and justiciable controversy exists among Setton, the Chubb Insurers, and the Travelers Insurers as to the Chubb Insurers' and the Travelers Insurers' respective contractual obligations to provide insurance coverage for claims involving the contamination and recall of Setton pistachios.

54.     A declaratory judgment will terminate completely the controversy among the parties.

55.     Third-party claims asserted against Setton seek damages for "bodily injury" or "property damage" during the policy periods commencing January 1, 2008, and January 1, 2009, caused by an "occurrence."

56.     No provision in the Chubb Policies excludes coverage for the claimed loss within the scope of those policies' coverage.

57.     No provision in the Travelers Policies excludes coverage for the claimed loss within the scope of those policies' coverage.

58.     As established by the facts alleged above, Setton provided prompt notice of the loss and has diligently cooperated with the Defendant Insurers in their investigations.

59.     As established by the facts alleged above, Setton has demanded performance by the Defendant Insurers of their respective contractual obligations.

60.     As established by the facts alleged above, the Defendant Insurers have issued reservations of rights and have not acknowledged their respective unqualified obligations to defend and indemnify Setton for loss within the scope of the coverage of their respective policies.

61.     Setton is entitled to a declaration that coverage is afforded under the Chubb Policies and the Travelers Policies, subject only to their expressly applicable dollar limits, and that the Defendant Insurers each have a duty to indemnify as well as to defend Setton against claims for losses allegedly arising from the contamination and recall of Setton's pistachios.

## SECOND CAUSE OF ACTION: AGAINST THE TRAVELERS INSURERS FOR BREACH OF CONTRACT

62.     Setton realleges and incorporates by reference the facts set forth in paragraphs 1 through **Error! Reference source not found.** as if fully set forth herein.

63.     In late 2008, the Travelers Insurers sold the Travelers Policies to Setton, with a policy period from January 1, 2009, to January 1, 2010, which provide a duty to indemnify Setton in the event of a covered loss.

64.     Setton paid to the Travelers Insurers the agreed-upon premium for the coverage provided by the Travelers Policies.

65.     All other required conditions and obligations of the Plaintiffs under the Travelers Policies have been performed or are subject to waiver or estoppel.

66.     Pursuant to the terms of the Travelers Policies, the Travelers Insurers are obligated to defend Setton against any "suit" seeking "bodily injury" or "property damage" during the policy period, caused by an "occurrence."

67.     Pursuant to the terms of the Travelers Policies, the Travelers Insurers are obligated to indemnify Setton for all sums that Setton becomes legally obligated to pay

as damages because of "bodily injury" or "property damage" during the policy period, caused by an "occurrence."

68.     As established by the facts alleged above, Setton has incurred covered losses during the policy period of the Travelers Policies arising out of the contamination and recall of pistachios.

69.     Setton is informed and believes that the Travelers Insurers have engaged in undue delay or failed to respond appropriately to certain claimants that have asserted third-party claims giving rise to covered loss.

70.     The Travelers Insurers have failed to cooperate with the Chubb Insurers in the investigation and defense of third-party claims giving rise to covered loss.

71.     The Travelers Insurers have unduly delayed the process of settling third-party claims giving rise to covered loss.  Among other consequences thereof, Kraft commenced an arbitration against Setton, and Sun Tree filed a lawsuit in Tulare County against Setton.

72.     The Travelers Insurers have alleged in the action filed in New York that the Travelers Policies do not cover Setton's loss and have sought the rescission of the Travelers Policies.

73.     As established by the facts alleged above, the Travelers Insurers have breached the terms of the Travelers Policies by failing to defend Setton without reservation, by failing to make a timely and diligent investigation and adjustment of certain third-party claims, and by failing to pay settlements without reservation.

74.     As established by the facts alleged above, the Travelers Insurers have repudiated and anticipatorily breached the Travelers Policies.

75.     As a direct and proximate result of the Travelers Insurers' foregoing breaches of contract, which are continuing as of the date of this Complaint, the Travelers Insurers have deprived Setton of the benefit of the insurance contracts for which Setton paid a substantial premium.

76.     As established by the facts alleged above, as a direct, proximate, and reasonably foreseeable result of the Travelers Insurers' breaches, Setton has suffered and will continue to suffer substantial damages, including reasonably foreseeable consequential damages, substantially in excess of $75,000.00 (exclusive of interest and costs).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Setton's International Foods, Inc., and Setton Pistachio of Terra Bella, Inc., demand judgment on the Complaint as follows:

1.  Declaring that coverage for Setton's claim is afforded under the Chubb Policies and that the Chubb Insurers have a duty to defend and indemnify Setton for its losses;

2.  Declaring that coverage for Setton's claim is afforded under the Travelers Policies and that the Travelers Insurers have a duty to defend and indemnify Setton for its losses;

3.  Finding that the Travelers Insurers are in breach of the Travelers Policies and awarding appropriate damages, to include reasonably foreseeable consequential damages not limited by the nominal limits of the policies, and pre- and post-judgment interest;

4.  Awarding Setton its costs and reasonable attorneys' fees incurred in the prosecution of its Complaint; and

5.  Granting such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Setton demands trial by jury on all issues that may be tried by jury.

DATED:  March 15, 2010

Respectfully submitted,


/s/ David B. Goodwin

David B. Goodwin (CA Bar # 104469)
Roy M. Bartlett, Jr. (CA Bar # 101563)
COVINGTON & BURLING LLP
One Front Street
San Francisco, California 94111-5356
Telephone: (415) 591-6000
Facsimile: (415) 955-6091

Attorneys for Plaintiffs
SETTON'S INTERNATIONAL
FOODS, INC. and SETTON
PISTACHIO OF TERRA BELLA, INC.